IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CHARLES EDWARD COOLEY, JR., | ) | |
| #230863, | ) | |
|        Plaintiff, | ) | |
| | ) | |
|     v. | ) | CASE NO. 2:21-CV-0074-RAH-CSC |
| | ) | (WO) |
| | ) | |
| SEDRICK S. WOODGET, | ) | |
| | ) | |
|        Defendant. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint, as amended, filed by an indigent state inmate, challenging actions which occurred at Elmore Correctional Facility.  (Doc. 12-2 at 2).  Plaintiff Charles Cooley alleges that in the late night hours of January 13, 2019, Defendant Sgt. Woodget used excessive force against him and then transferred him to Kilby without his property.  *Id.* at 2-3.  He does not state whether he sues the Defendant in his individual or official capacity.  He seeks monetary damages and declaratory relief including an order that an MRI be performed on his leg and criminal charges be brought against Defendant. *Id.* at 4-5

The Defendant filed a special report (Doc. 23, Exs. 1-11), which included relevant evidentiary materials in support, specifically affidavits, prison documents and medical records, addressing the claims presented by Cooley.  In these documents Defendant Woodget denies that

---

[1]All documents and attendant page numbers cited herein are those assigned by the clerk of this court in the docketing process.

he violated Plaintiff's constitutional rights in any manner.  Defendant also filed a DVD recording of the incident.  (Docs. 23-5 and 24).

After reviewing the special reports and exhibits, the court issued an order on June 15, 2021, requiring Cooley to file a response to the Defendant's special report, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  This order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 25 at 2-3). (Emphasis in original).  Cooley filed a response to this order.  (Docs. 37 and 38).  Pursuant to the directives of the order entered on June 15, 2021, the court now treats the Defendant's special report as a motion for summary judgment and concludes that summary judgment is due to be granted on all Plaintiff's claims as further set out herein.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the

2

case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id.* at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in her favor. *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape

the burden of establishing by sufficient evidence a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Cooley's pro se status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record.  After such review, the court finds that Cooley has failed to demonstrate a genuine issue of fact on his excessive force claim against Defendant Sgt. Woodget and has failed to state a claim for denial of due process against Sgt. Woodget due to Cooley being transferred to Kilby without his property.[2]  Thus, the court concludes that summary judgment is due to be granted in favor of Defendant Sgt. Woodget on each of Plaintiff's claims as discussed more fully below.

### III.  FACTS

In his Amended Complaint, Plaintiff claims that on January 13, 2019, while he was housed at Elmore Correctional Facility, there was a disturbance between blacks and whites pertaining to an inmate with a drug problem. (Doc. 12-2 at p. 2).   With respect to that disturbance, he states as follows:

> "I never said that I was going to kill anyone to the best of my recollection.  *I do recall breaking a broom stick, and getting a knife off of a {sic}inmate bed in the midst of the attention in the dorm.  My true attention was never toward the officers in general.* The officer who responded {sic}to the code sprayed me with an 'illegal spray'.  I recollect running between the beds that when Officer Sedrick S. Woodget 'stated very loudly don't know body {sic} have time to play with you.'

---

[2]  It is well established that a convicted prisoner has no constitutional right to confinement in a particular prison.  *Meachum v. Fano,* 427 U.S. 215, 224 (1976). Moreover, the undisputed evidence demonstrates that as a Correctional Sergeant, Defendant Cooley had no authority to transfer Plaintiff from one prison to another and that he lacked knowledge of the circumstances surrounding Plaintiff's transfer to Kilby. (Doc. 23-1 at p. 2).

> That when he grab a whole 250 pound iron bench and throw it very straight hitting me in my lower left leg fractureding{sic}my lower leg. 'There are cameras in the unit.' Officer Woodget also was one of the officer's {sic} who transferred me to Kilby Correctional Fac. and stated to the nurses upon arrival there is nothing wrong with him."

(Doc. 12-2 at p. 2) (Emphasis added). The Defendant filed a DVD containing video evidence of this incident, which lasts a total of about five minutes. (Docs. 23-5 and 24). The court has carefully reviewed the video evidence. While a good portion of what occurs with Plaintiff happens off video, the tape clearly shows Plaintiff aggressively approaching a correctional officer with a broken stick in his hand and an object in the other hand that he continuously raises and jabs at the officer, who is backing away. *Id.* The video also shows a number of other officers entering the dorm area, chasing, and attempting to subdue Plaintiff. *Id.* The Plaintiff admits that he was holding a broken broomstick in one hand and some form of a knife in the other during the disturbance and acknowledges that he was "running between the beds." (Doc. 12-2 at p. 2).

The affidavits of the correctional officers, including Defendant Woodget, confirm the video evidence and provide added detail for what occurs off video. (Docs. 23-1, 23-2, 23-3, 23-4). Defendant Woodget testifies as follows:

> I did not strike inmate Charles Cooley B/230863 with the bench. On January 13, 2019, at approximately 11:25 pm, Officer Sanders yelled on the radio "Code Red" in a-2 Dormitory I arrived on the scene and observed inmate Cooley swinging a knife at Officer Sanders and the other responding Officers. I gave a loud direct order for inmate Cooley to drop the knife and he refused to comply. I sprayed a one second burst of Sabre Red spray to the facial area of inmate Cooley. Inmate Cooley's allegation that I hit him with a bench is untrue. The bench was used as a barrier to keep distance between Cooley and the officers, as he swung a knife at the officers. The bench never hit Cooley at all. The injury to Inmate Cooley was

caused by his refusal to obey a direct order of another officer.  Another officer struck Inmate Cooley in the perennial area.

(Doc. 23-1 at p. 1).  Defendant Woodget further denies knowledge of the facts surrounding the transfer of Plaintiff and states that such a decision is "made by a Warden or other prison official."  *Id*. at p. 2.

Correctional Officer D'Marcus Q. Sanders testifies that on January 13, 2019, he "came out of the cube because of the noise." (Doc. 23-1 at p. 1).  He confirms that he is the officer in the video upon whom Plaintiff advanced with a broom stick and a knife.  *Id.*  He further testifies that Defendant Woodget, Officer Free, Officer Thompson and Officer Buck responded to his call for assistance in A2 dorm. *Id.*

Correctional Officer Thomas Thompson testifies that upon responding to the Code Red in A2, "Cooley came from my blind side and snatched my baton from my possession, when I moved toward him to try to get my baton back, he swung at me."   (23-4 at p.1).  He further states that after pursuing Cooley through the dorm bed area,

> "Officer Free struck him in the forearm with his own baton.  He [Cooley] dropped my baton I picked it up and immediately secured it.  Inmate Cooley swung the knife at Officer D. Free and I removed my baton and struck inmate Cooley in the common peronial {sic} area of the leg."

*Id.*   Thereafter, Cooley placed the knife on the ground, was cuffed and taken to the Shift Commanders Office.  *Id.*

The first Body Chart taken at 12:45 a.m. on January 14, 2019, noted Plaintiff was "combative" and "made no clear statement"; he was "talking loudly with disturbed thought process and inappropriate words noted."  (Doc. 23-7 at p. 1).  Thereafter, a second Body Chart

taken at 3:55 a.m. on January 14, 2019, reported, "Left Lower Leg edema noted, unable to move

leg voluntarily, unable to wiggle toes." (Doc. 23-8 at p. 1).  An x-ray performed on January 14,

2019, showed Plaintiff sustained a fracture of the left tibia. (Doc. 29-11 at p. 1).  A January 15th

note showed Plaintiff was prescribed a "hinged knee brace."  *Id.*

## IV.   DISCUSSION

### A. OFFICIAL CAPACITY CLAIMS

To the extent Cooley requests monetary damages from the Defendant in his

official capacity, Defendant Woodget is entitled to absolute immunity.  Official capacity lawsuits

are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v.*

*Graham*, 473 U.S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by
> private parties against States and their agencies [or employees]. There are two
> exceptions to this prohibition: where the state has waived its immunity or where
> Congress has abrogated that immunity. A State's consent to suit must be
> unequivocally expressed in the text of [a] relevant statute. Waiver may not be
> implied.  Likewise, Congress' intent to abrogate the States' immunity from suit
> must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and

citations omitted).  Thus, a state official may not be sued in his official capacity unless the state

has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v.*

*Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see*

*Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that
> "the State of Alabama shall never be made a defendant in any court of law or

> equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this
> prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is

prohibited by the Alabama Constitution). "Alabama has not waived its Eleventh Amendment

immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753

(11th Cir. 2017) (citing *Carr v. City of Florence, Ala*., 916 F.2d 1521, 1525 (11th Cir. 1990)).  In

light of the foregoing, the Defendants are entitled to sovereign immunity under the Eleventh

Amendment for claims seeking monetary damages from them in their official capacities.

*Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998)

(holding that state officials sued in their official capacities are protected under the Eleventh

Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517,

1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his

official capacity).   Thus, the court will now address the Plaintiff's claims brought against

Defendant in his individual capacity.

## B.  CLAIMS FOR DELIBERATE INDIFFERENCE

1. **Standard of Review.**  "A prison official's duty under the Eighth Amendment is to

ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable

task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*,

511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).  Officials

responsible for prison inmates may be held liable under the Eighth Amendment for acting with

"deliberate indifference" to an inmate's health and safety when the official knows that the inmate

faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing

to take reasonable measures to abate it.  *Id*. at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834.  "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . .  They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves."  *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted).  The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety."  *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same).  "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment."  *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim.  *Farmer*, 511 U.S. at 837.  "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature."  *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well-settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation. *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same). The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]" *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v.*

> *Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . .
> Even assuming the existence of a serious risk of harm and legal causation, the
> prison official must be aware of specific facts from which an inference could be
> drawn that a substantial risk of serious harm exists – and the prison official must
> also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).

A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted). Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id*. Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted). In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm and with this knowledge consciously disregard the risk. *Farmer*, 511 U.S. at 837.

The court will now turn its attention to the Plaintiff's claims of deliberate indifference. For the following reasons, the court concludes that Plaintiff has failed to demonstrate a genuine issue of material fact exists as to whether the force used by Defendant Woodget against him on

the late-night hours of January 13, 2019, was applied "maliciously or sadistically".  *Whitley v. Albers*, 475 U.S. 312 at 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).   The court further concludes that summary judgment is due to be granted on the Plaintiff's deliberate indifference claims premised upon his allegations of excessive force against Defendant Woodget.

### 2. **Excessive Force**

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).   "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted).   "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  *Sims v. Artuz*, 230 F.3d 14, 22 (2nd Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component.  *Hudson*, 503 U.S. at 8.  The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind."  *Id.*  (internal quotations omitted).  To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  *Sims*, 230 F.3d at 21.   With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."  *Hudson*, 503 U.S. at 8.   In

addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Summarizing the excessive force standard in the prison context, the Eleventh Circuit wrote:

> [u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

Recently, the Eleventh Circuit applied the *Whitley* factors in a §1983 action brought by a pro se prisoner for injuries he received during the inspection of his cell after he failed to follow

an order from the defendant prison officers. *Miles v. Jackson,* 757 F. App'x. 828 (11th Cir. 2018).  In *Miles,* the court identified the five factors relevant in determining whether force was applied "maliciously or sadistically" as "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat 'reasonably perceived by the responsible officials,' . . . (4)'any efforts made to temper the severity of the use of a forceful response,'" and  "(5) [t]he absence of serious injury." *Id.,* at 829 citing *Hudson,* 503 U.S at 7; quoting *Whitley,* 475 U.S. at 320-21.

Most of the facts in this action are not in dispute.  Indeed, the testimony of Plaintiff and all correctional officers, including Defendant confirm the video evidence which shows Plaintiff, in a dorm room full of unrestrained prisoners, aggressively advancing upon Officer Sanders while holding a broken broomstick in one hand and a knife in the other hand. (Doc. 12-2 at p.2; Doc. 23-1, Doc. 23-2, Doc. 23-3, Doc. 23-4, Doc. 23-5 and Doc. 24.)  Thus, the Court concludes that there was clear need for force against Plaintiff because of his demonstrated intent to harm Officer Sanders.  Furthermore, when Officer Thompson arrived, Plaintiff succeed in taking his baton from him. (Doc. 23-4 at p. 1). The Court also concludes that not only did Plaintiff present a threat to Officer Sanders, while he was armed, unrestrained and aggressively advancing on Officer Sanders, but because Plaintiff disarmed Officer Thompson, and actively continued to resist his arrest, his actions also created the danger of the involvement of other unrestrained prisoners who were housed in a large bunk room, which presented a further threat to the correctional officers present and to the prisoners themselves.  Accordingly, the first and third *Miles* factors weigh against Plaintiff.  757 F. App'x at 829.

14

Additionally, the correctional officers' testimonies confirm Plaintiff was given multiple orders by them to disarm and allow himself to be handcuffed, but that he continued to refuse to comply with these direct orders.  (Doc. 23-1, Doc. 23-2, Doc. 23-3, Doc. 23-4).  Plaintiff does not dispute this fact.  Indeed, the video shows the arrival of additional correctional officers, who pursued Plaintiff around the dorm beds and areas off camera.  (Doc. 23-5 and Doc. 24).  The correctional officers' written testimony confirms that during this time multiple verbal orders were given to Plaintiff to disarm and stand down.  (Doc. 23-1 at pp. 1-2, Doc. 23-2 at p.1, Doc. 23-4 at p. 1).  On the bottom left side of the video, near the conclusion, it is evident that that correctional officers eventually come into contact with Plaintiff, but the specific facts of his final capture are not viewable.  (Doc. 23-5 and Doc. 24).  Officer Thompson testifies that they pursued Plaintiff to the front of the dorm where he

> "charged at Officer Free.  Officer Free instructed Inmate Cooley to drop the knife and my Baton.  Inmate Cooley failed to comply.  Officer Free sprayed a one second burst of Sabre Red. Inmate Cooley charged at Officer Free once again.  Officer Free struck him in the forearm with his own baton.  He dropped my baton I picked it up and immediately secured it. Inmate Cooley swung the knife at Officer D. Free and I removed my baton and struck Inmate Cooley in the Common peronial {sic}area of the leg and Officer Free sprayed Him once again with Sabre Red Chemical Agent then inmate Cooley complied and placed the knife on the ground . . . [and was] handcuffed."

(Doc. 23-4 at p. 1). Even assuming the truth of Plaintiff's testimony that during the course of his pursuit and capture, Defendant threw a 250-pound bench at him breaking his leg[3], the Court concludes that the level of Plaintiff's continued resistance to capture, including his disregard of multiple verbal orders and his aggressive and violent response against correctional officers

---

[3] Defendant denies this claim and states that the "bench was used as a barrier to keep distance between Cooley and the officers, as he swung a knife at the officers."  (Doc. 23-1 at p.1).

created such a threat by Plaintiff to other prisoners and correctional guards present and to prison safety as a whole, that the second and fourth *Miles* factors weigh against Plaintiff. 757 F. App'x at 829. Accordingly, the court concludes that Plaintiff fails to create a fact question as to whether the force applied by Defendant Woodget was applied "maliciously or sadistically". *Whitley,* 475 U.S. at 320-21.

*Miles* also requires consideration by the court about the extent of the injury suffered by the Plaintiff. 757 F. App'x at 829. Here, it is undisputed that as a result of the January 13, 2019, occurrence Plaintiff suffered a fractured tibia for which he received medical treatment. (Doc. 23-11). The Court recognizes that a broken leg would be considered a "serious" injury. However, the Court concludes under the facts of this case, including Plaintiff's violent resistance to arrest by which he created an extreme threat to correctional officers, other prisoners and prison safety as a whole, that Plaintiff's injury does not create a question of fact as to whether Defendant Woodget acted "maliciously or sadistically" when he allegedly threw the bench at Plaintiff breaking his leg. *Miles,* 757 F. App'x at 830. Accordingly, the court concludes that summary judgment is due to be granted on Plaintiff's excessive force claim against Defendant Woodget.

## V. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The Defendant's motion for summary judgment be GRANTED on each of Plaintiff's claims;

2. Judgment be entered in favor of the Defendant;

3. This action be DISMISSED with prejudice;

    4.   No costs be taxed.

On or before **March 21, 2024**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 6th day of March, 2024

      /s/  Charles S. Coody
     UNITED STATES MAGISTRATE JUDGE